# FISHER *v.* BALLINGER.

PUBLIC LANDS; DESERT LANDS; EQUITY; OFFICERS; INJUNCTION.

1. Desert land so far reclaimed by a former entryman that in one year it produced 200 tons of hay is not subject to desert-land entry after the relinquishment of the land by such entryman.

2. A court of equity will not exercise its discretion and lend its aid in a case where it is clear no equity exists.

3. A bill in equity by the assignee of an entryman of public land against the Secretary of the Interior, who has directed the cancelation of the entry on the ground of fraud and collusion between the entryman and others, to enjoin the Secretary from proceeding further without first according the plaintiff a hearing upon the question of whether such fraud and collusion in fact existed,—will not lie, where it appears that, aside from such question, the land was not subject to the entry made, and that therefore the plaintiff had acquired no right thereunder from the assignor. (Citing *Garfield* v. *United States*, 31 App. D. C. 332.)

No. 2229. Submitted January 6, 1911. Decided March 6, 1911.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia, dismissing a bill for injunction against the Secretary of the Interior.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal [by Fred C. Fisher] from a decree of the supreme court of the District of Columbia, dismissing appellant's bill to restrain the Secretary of the Interior from canceling the desert-land entry, under which appellant claims, until appellant is accorded a hearing upon the precise question determined by the Secretary, and forming the basis of his decision that said entry be canceled.

The hearing before the trial court was upon bill, answer, and agreed statement of facts. The land in controversy is in the S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, the W. $\frac{1}{2}$ of S. E. $\frac{1}{4}$, and the S. W. $\frac{1}{4}$ of sec. 2, and the N. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ of sec. 3, T. 34 N., R. 110 W., Evanston land district, Wyoming, and contains 320 acres. Several years prior to 1902, one James Westfall settled upon this land, reclaimed part of it, and then deserted his family. In 1902 his son, Perry A. Westfall, made desert-land entry of part of said land, and on June 21st, 1903, assigned his interest to Cordelia Helen Fisher, wife of the complainant. On August 21st, 1903, William H. Allen, who had entered the residue of said tract, also assigned his interest to Mrs. Fisher. At the time of the taking of these assignments, Mrs. Fisher had exhausted her right under the desert-land act by entry of 320 acres. She, however, was advised by the register of the United States land office at Evanston, Wyoming, that notwithstanding she had exhausted her personal right in the premises, she could take another 320 acres by assignment. This advice was erroneous, but she acted upon it, and paid about $1,200 for the improvements and rights she was supposed to have acquired. The work of reclamation, begun by James Westfall, and continued by her assignors, she supplemented by grubbing and irrigating the land, so that in 1905 about 200 tons of hay were cut thereon.

Learning that the advice of the register as to her right to take this land was erroneous, and that she was disqualified to enter it, Mrs. Fisher, on July 15th, 1905, relinquished said land, and her entry was canceled. Thereafter, on July 17th,

1905, E. May Inkster, a cousin of Mrs. Fisher, and a member of the Fisher household, made oath before complainant, as United States Commissioner, to her declaration of intention to *reclaim* said land *under the provisions of the desert-land laws.* This declaration was in due form and accompanied by the required affidavits. Thereafter, on July 20th, 1905, the register and receiver of the United States land office in said Evanston issued their joint certificate in regular form, certifying that said entrywoman had filed her declaration as aforesaid. Thereafter, on August 10th, 1905, Miss Inkster gave notice that on September 23d, 1905, she would make final proof of said land claim before complainant, as United States Commissioner, and on that day final proof was made, final charges paid, and on October 7th, 1905, the register of said land office executed a final certificate to said land. On December 23d, 1905, Miss Inkster conveyed this land to the complainant out of gratitude to him and Mrs. Fisher for providing her a home, and realizing, as Mr. Fisher subsequently stated in his testimony, that the Fishers "put the money up for all the improvements."

On May 17th, 1906, one William J. Alexander filed a contest affidavit at the United States land office at said Evanston, Wyoming, praying that said Inkster desert-land entry be canceled and forfeited to the United States, because "said land is not desert in character, and at the time of entry was, and had been for a number of years, thoroughly reclaimed, and was then producing a paying crop of hay." Thereafter, on June 10th, 1907, after due notice to the parties, a hearing was had in said contest proceeding before the register and receiver of the land office at Evanston, Mr. and Mrs. Fisher being present and testifying. The decision was in favor of Mr. Fisher, and appeal was thereupon prosecuted to the Commissioner of the General Land Office, who, upon the testimony already in the case, reversed the decision of the local land officers, and in the course of his opinion said: "In her (Miss Inkster's) declaration executed July 17th, 1905, before Fred C. Fisher, United States Commissioner, she swore *inter alia,* that said land has hitherto been unappropriated, unoccupied, and unsettled, because it has

been impossible to cultivate it successfully on account of its dry and arid condition.

"If the entrywoman did not know this to be false, the officer before whom she so declared knew it to be so, as he had been irrigating and cutting hay from the land, averaging more than a ton to the acre, for the two years preceding the entry of the land by Inkster. The evidence submitted leads to the inevitable conclusion that Inkster, the entrywoman, was in collusion with the Fishers, and that she made the entry with the intent to convey the title to them.

"Without considering other questions presented in this appeal, it is sufficient to state that land that has been effectually reclaimed is not subject to desert-land entry. (*Taylor* v. *Rogers,* 14 Land Dec. 194.) The land embraced herein was unmistakably of that character when Inkster attempted to acquire title thereto by entering same under the desert-land laws, and her attempt must fail."

An appeal was taken from the decision of the Commissioner, and the First Assistant Secretary of the Interior, in deciding that appeal, stated that the material facts in the case had been correctly recited in the decision of the Commissioner; that "with reference to the condition of the land, the testimony shows that it was practically reclaimed when Miss Inkster's entry was made." The Assistant Secretary then found that Miss Inkster's "entry was made solely in the interest of Mrs. Fisher, who was not qualified to complete the entries of Westfall and Allen, and that it was used as a subterfuge to accomplish indirectly what could not be done directly." He thereupon affirmed the decision of the Commissioner.

Thereafter Miss Inkster filed a motion for review of the decision of the Assistant Secretary, assigning as one of the grounds for her motion that it was error on his part "to find fraud, conspiracy, or collusion between the entryman and others, as no such charge was made in the contest, and that question was not put in issue by the contest." This motion was overruled, the Assistant Secretary, in his opinion, saying: "It is evident that Mrs. Fisher will sustain great loss because of her inability

to make available her rights under the assignments of Westfall and Allen, unless she can recover from her assignors. The rights assigned to her by Westfall and Allen were valuable rights, for which a large consideration was paid, and there appears to be many equities in her favor by reason of her expenditure of money on the erroneous advice of the government officer, if the Department was not powerless to recognize in her any right under said assignment. But it cannot be seen how she can be affected by the cancelation of this entry, except upon the theory that her relinquishment of a valuable right without compensation, and the entry of Miss Inkster, were designed to accomplish indirectly what could not be accomplished under her assignment.

"That is the view the Department took of the case, and it is immaterial whether it was charged in the contest or not. The government will investigate for itself every question, in order that no portion of the public lands shall be disposed of to a person not entitled to it."

Thereafter a motion for re-review, accompanied by affidavits, was filed. One of those affidavits was by the complainant, who therein stated "that had I been apprised of the fact that the contest was being prosecuted upon any ground of collusion and conspiracy with E. May Inkster, I could have completely disproved same." Thereafter, on March 25th, 1909, said motion for re-review was denied.

Thereafter, on June 24th, 1909, the Commissioner of the General Land Office caused to be placed upon the proper tract book in his office the notation of cancelation of said desert-land entry, so made by Miss Inkster, and caused a like notation to be made upon the final certificate issued by the register, and receiver upon said entry, and on the same day said Commissioner wrote to the register and receiver of the local land office at Evanston, Wyoming, inclosing a copy of said decision of the Assistant Secretary of the Interior. The letter contained the following: "The entry is hereby canceled. You will allow contestant thirty days' preference right of entry." Thereafter, on June 28th, this suit was filed, and on the same day the Com-

missioner of the Land Office telegraphed the local officers at Evanston, Wyoming, countermanding the order to note cancelation of the Inkster entry, and directing the return of said letter of June 24th. This telegram reached the local officers before any action had been taken upon the Commissioner's letter.

After the refusal of the trial court to issue a restraining order *pendente lite,* and pending final decision in that court, appellees directed the local land officers in Wyoming to note cancelation of the Inkster entry, and permitted others to file homestead entries upon the land involved; in other words, between the filing of the bill and final hearing in the cause, the act sought to be prohibited was done. These facts were brought to the attention of the trial court by supplemental bill. Upon final hearing, however, the court contented itself with an order denying any relief, and dismissing the entire proceeding.

*Mr. Webster Ballinger* for the appellant.

*Mr. Oscar Lawler, Mr. F. W. Clements,* and *Mr. C. Edward Wright* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

It is here suggested that a moot case only is presented for our consideration.

Without intimating any opinion upon the other questions suggested, we are quite content to rest our decision upon the fundamental proposition that appellant has no right to complain of the refusal of the Assistant Secretary of the Interior to grant him a hearing upon the question whether there was collusion between appellant and Miss Inkster, assuming that there was such a denial, for the reason that he has no right to protect. We find it impossible to escape the conclusion, from the evidence in this record, that when Miss Inkster, in July, 1905, filed on this land, it was not desert in character, but that its condition was practically the same as it was when final proof

was made about two months later. James Westfall, many years prior thereto, had settled upon and partially reclaimed this land. From 1902 down to the time Mrs. Fisher attempted to acquire the land, sufficient progress had been made towards its reclamation to induce her to pay a considerable sum of money for the improvements thereon. Appellant's evidence in the contest proceedings shows that this work of reclamation was continued by Mrs. Fisher so successfully that the summer she relinquished the land it produced 200 tons of hay. When Mrs. Fisher relinquished the land, it, of course, reverted to the public domain; and unless it was in fact desert land, it was not subject to entry as such. The Commissioner of the Land Office correctly found that at that time the land had been effectually reclaimed, and was not subject to desert-land entry. Appellant makes no contention that he was not accorded a hearing upon that question. That hearing demonstrated conclusively the lack of equity in appellant's claim. "The machinery of the law may always be set in motion to protect valid property rights; but here no rights exist." *Garfield* v. *United States,* 31 App. D. C. 332. The right of the complainant in this case to the land in controversy is based upon the Inkster entry. It appearing that the land was not subject to such entry, no rights could attach thereunder. It is therefore immaterial whether the Assistant Secretary based his decision upon the finding of collusion, as a court of equity will not exercise its discretion and lend its aid in a case where it is clear that no equity exists.

The decree will therefore be affirmed, with costs.

*Affirmed.*